UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRENDAN PIERRE-LOGERALD
MORGAN,

         Plaintiff,

   v.

CITY OF TAYLOR, a Michigan municipal corporation, THOMAS AMROSS, TYLER PEAKE, OFFICER SIMMONS, DANIEL NASTOSKI, MARIO HINOJOSA, ANNAMARIE LUMETTA, JORDAN CHAMBERLAIN, RONALD JONES, and DET. MATTHEW OLIVER, in their individual capacities,

         Defendants.

Case No.
Hon.

_____/

Joel B. Sklar (P38338)
LAW OFFICES OF JOEL B. SKLAR
Attorney for Plaintiff
500 Griswold, Suite 2450
Detroit, MI 48226
313-963-4529 / 313-963-9310 (fax)
joel@joelbsklarlaw.com

Todd Russell Perkins (P55623)
Stephen J. Chacko (P78210)
PERKINS LAW GROUP, PLLC
Attorneys for Plaintiff
615 Griswold, Suite 400
Detroit, MI 48226
(313)964-1702

_____/

## COMPLAINT AND JURY DEMAND

Plaintiff, Brendan Pierre-Logerald Morgan, by and through his attorneys Todd Perkins Law Group, PLLC, and Law Offices of Joel B. Sklar, files this Complaint and says:

## JURISDICTION

1. On April 1, 2020, Plaintiff, Brendan Morgan, a 33-year-old Black male, was unlawfully grabbed from his vehicle, repeatedly tased, punched, kicked, and viciously beaten by a gang of at least seven White City of Taylor Police Officers, all of which was captured on video tape. When the abuse finally stopped, Officer Nastoski looked down at Plaintiff and said: *"Welcome to Taylor."* Plaintiff was charged with felonies of assaulting/resisting/obstructing a police officer and fleeing and eluding. He was also charged with two misdemeanors for domestic violence and damaging property. At the preliminary examination, the state district court watched the police video, and heard testimony from some of the officers and dismissed the felony charges for lack of probable cause. The Wayne County Prosecutor's Office never appealed. The two misdemeanor charges were also dismissed. Plaintiff files this *42 USC § 1983* action for the violation of his clearly established (1) *Fourth Amendment* guarantees against unreasonable searches and seizures and (2) *Fourteenth Amendment Equal Protection Clause* guarantees against discrimination based on race.

2

2. This Court has jurisdiction over this case under *28 USC §§ 1331, 1343(3), 2201* and *201*.

3. This is a proceeding pursuant to *42 USC § 1983* to redress the violation of rights and liberties guaranteed to Plaintiff by the *Fourth* and *Fourteenth Amendments* to the Constitution of the United States.

4. Plaintiff Brendan Morgan is an individual who resides within this District.

5. Defendant City of Taylor is a Michigan municipal corporation doing business within this District and operates the City of Taylor Police Department ("TPD").

6. Defendant Thomas Amross was/is a sworn police officer for the City of Taylor who resides and/or transacts business within this Judicial District. At all times Defendant Amross was acting under color of law. He is being sued in his individual capacity.

7. Defendant Tyler Peake was/is a sworn police officer for the City of Taylor Police Department who resides and/or transacts business within this Judicial District. At all times Defendant Peake was acting under color of law. He is being sued in his individual capacity.

8. Defendant Daniel Nastoski was/is a sworn police officer for the City of Taylor Police Department who resides and/or transacts business within this

Judicial District. At all times Defendant Nastoski was acting under color of law. He is being sued in his individual capacity.

9. Defendant Mario Hinojosa was/is a sworn police officer for the City of Taylor Police Department who resides and/or transacts business within this Judicial District. At all times Defendant Hinojosa was acting under color of law. He is being sued in his individual capacity.

10. Defendant Ronald Jones was/is a sworn police officer for the City of Taylor Police Department who resides and/or transacts business within this Judicial District. At all times Defendant Ronald Jones was acting under color of law. He is being sued in his individual capacity.

11. Defendant Officer Simmons was/is a sworn police officer for the City of Taylor Police Department who resides and/or transacts business within this Judicial District. At all times Defendant Officer Simmons was acting under color of law. He is being sued in his individual capacity.

12. Defendant AnnaMarie Lumetta was/is a sworn police officer for the City of Taylor Police Department who resides and/or transacts business within this Judicial District. At all times Defendant Lumetta was acting under color of law. She is being sued in her individual capacity.

13. Defendant Jordan Chamberlain was/is a sworn police officer for the City of Taylor Police Department who resides and/or transacts business within this

Judicial District. At all times Defendant Chamberlain was acting under color of law. He is being sued in his individual capacity.

14. Defendant Detective Matthew Oliver was/is a sworn police officer for the City of Taylor Police Department who resides and/or transacts business within this Judicial District. At all times Defendant Oliver was acting under color of law. He is being sued in his individual capacity.

15. The individually named TPD Defendant officers are not entitled to qualified immunity because they violated Plaintiff's clearly established *Fourth* and *Fourteenth Amendment* rights of which any reasonable state actor would have known.

16. Venue is proper within this District pursuant to *28 USC § 1391(a)(1)* and *(2),* since the events which give rise to this action all took place in Wayne County, Michigan and Defendants are all located here.

## **FACTS**

17. Plaintiff restates each of the above allegations word for word and paragraph for paragraph.

18. On April 1, 2020, at approximately 1:30 a.m., the TPD dispatched White officers, Defendants Amross, Nastoski, Simmons, Peake, Hinojosa, Lumetta, Jones and Chamberlain, to 24347 Filmore on a report of a domestic disturbance.

19. While in route, the TPD purportedly advised all responding officers that Plaintiff had assaulted his girlfriend, tried to kick in the front door of her home, and left the scene in a black Audi heading eastbound on Chernick.

20. Amross located a black Audi A6 traveling eastbound on Chernick towards Telegraph. Amross advised Dispatch he was behind the vehicle.

21. Amross activated his overhead lights and siren behind Plaintiff's vehicle.

22. Defendants Simmons and Peake were in a fully marked cruiser right behind Amross, with more officers on the way.

23. Plaintiff immediately slowed his vehicle, activated his turn signal, pulled into a well-lit gas station on Chernick and Telegraph, and brought his car to a dead stop.

24. Plaintiff knew of other well-publicized cases where Black men, just like him were beaten or killed by White police officers in stops, just like this one.

25. Plaintiff showed his hands to the officers, made no furtive gestures, was unarmed and compliant.

26. TPD Officers Amross, Nastoski, Simmons, and Peake, rushed toward Plaintiff, all swearing and screaming at him to exit the vehicle.

27. Officer Amross drew his revolver from his holster with his left hand, pointed it at Plaintiff's head, leaned inward and punched Plaintiff with his closed

right fist through the open car window.

28. Other officers removed their weapons from their holsters.

29. Amross grabbed Plaintiff's left arm through the driver's side window while Nastoski opened the driver's side door and grabbed Plaintiff around the neck and pulled him from the car.

30. Plaintiff offered no resistance of any kind.

31. Nastoski, together with Amross, Simmons, and Peake, forcibly "escorted" Plaintiff from his vehicle and "assisted" him to the pavement where Plaintiff landed on his right arm which was trapped beneath him.

32. The officers attempted to handcuff Plaintiff as TPD Officers Chamberlain, Hinojosa and Lumetta joined in on the gang-like beating of Plaintiff, who was utterly defenseless.

33. While on the ground, Defendant Simmons gratuitously deployed his department issued taser to "drive stun" Plaintiff at least three successive times.

34. Plaintiff screamed in pain as the other TPD officers continued to punch Plaintiff's body with their closed fists. Plaintiff believed the officers were going to kill him.

35. No TPD officer made any effort to stop the gang-like beating of Plaintiff despite the obvious illegal conduct of the TPD officers and clear threat to Plaintiff's safety and well-being.

36. After the beat down, Defendant Nastoski looked down at Plaintiff and told him: *"Welcome to Taylor."*

37. When they returned to the TPD, Defendants Amross, Simmons, Peake, Nastoski and Chamberlain each generated police reports to memorialize and document their encounter with Plaintiff.

38. The reports generated by the TPD officers contained deliberate lies and falsehoods about Plaintiff's conduct and that of the TPD officers.

39. Anyone who compared the police video recordings with the police reports would know the officers deliberately mischaracterized, misrepresented and omitted material facts to hide their misconduct and railroad Plaintiff.

40. Defendant Detective Matthew Oliver reviewed the police video tapes and knew the reports generated by Defendants Amross, Simmons, Peake, Nastoski and Chamberlain were neither true nor accurate.

41. Defendant Detective Oliver also knew Plaintiff's girlfriend did not want to prosecute Plaintiff for the two misdemeanor charges.

42. Detective Oliver did not care about the purported victim's wishes or the truth.

43. Detective Oliver carefully prepared and delivered a request for a warrant on the felonies of assaulting/resisting/obstructing a police officer (M.C.L. § 750.81d(1)) and fleeing and eluding (M.C.L. § 257.602a(2)) to the Wayne

County Prosecutor's Office.

44. When he delivered the warrant request and recommendation, Defendant Detective Oliver purposely *did not provide* the Wayne County Prosecutor's Office with the police video recordings of Plaintiff's arrest, beating or detention.

45. On April 2, 2020, Plaintiff was charged with the above referenced felonies, together with the misdemeanors of malicious destruction of property less than $200.00 (M.C.L. § 750.380(5)) and domestic violence (M.C.L. § 750.812).

46. On July 27, 2020, a preliminary examination was conducted in the 23rd District Court for the alleged felonies.

47. At the preliminary examination, Defendants Amross and Peake testified under oath as to their encounter with Plaintiff.

48. The state district court also reviewed the police video tapes to see whether the officers were being truthful and whether Plaintiff did anything to support the felony charges.

49. The state district court was appalled at the TPD officers' unlawful conduct and dismissed the felony charges against Plaintiff for lack of probable cause.

50. The state district court explained:

THE COURT:   Okay, you know, obviously, it's not for this Court to decide what the police officers' actions were. I think that's up to the chief of

9

police and the - - whatever commission is over the police department. The questions in front of me is did the defendant do something that would obstruct or resist the police officers in making this arrest, and number two, did he [sic] failure to stop when given a signal. It's been indicated that approximately a minute 34 seconds passed from the time the officer was following him--

MS. RICHARDS: Your Honor, if I may, it was 33 seconds

****

THE COURT: In any case, the defendant did pull into the gas station, did stop, he was not blocked, and in point of fact, watching the video and listening to the testimony of the officers, they saw both his hands, Either Mr. Peake or Officer Amross saw both the right and the left hand. He obviously didn't have a weapon in either hand, and I didn't see anything that would indicate to me that he resisted or opposed the officers, outside of perhaps a few seconds where his right arm was underneath his body and he didn't put it to his back. I think the short period of time that he was driving was reasonable in getting to a lighted safe area to pull over. I think that was appropriate, and it was a reasonable response to the officer's signal. Therefore, I am going to dismiss Counts I and II.

(Preliminary Examination Tr., pp. 32-33)

51. Later, the misdemeanor charges against Plaintiff were also dismissed.

## COUNT I

### *FOURTH AMENDMENT* VIOLATIONS WRONGFUL ARREST, EXCESSIVE FORCE AND MALICIOUS PROSECUTION

52. Plaintiff restates word for word and paragraph for paragraph each of the above allegations.

53. *42 USC § 1983* provides that:

Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Colombia subjects or

10

causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and shall be liable to the party injured in an action at law, suite or in equity, or other appropriate proceedings for redress.

54. Plaintiff is a citizen of the United States and all of the individual Defendants are "persons" under *42 USC § 1983*.

55. At all times, the individual Defendant TPD officers were acting under color of state law and their acts or omission were conducted within the scope of their official duties or employment.

56. Plaintiff had a clearly established constitutional right under the *Fourth Amendment* to be secure in his person from unreasonable search and seizure.

57. Plaintiff had a clearly established constitutional right under the *Fourth Amendments* to be free from unlawful arrests, detentions, use of excessive force and malicious prosecution.

58. Defendant Amross violated Plaintiff's clearly established *Fourth Amendment* rights when he arrested Plaintiff absent any legal basis to do so, threatened Plaintiff's life, grabbed, beat and abused Plaintiff.

59. Defendants Amross, Nastoski, Simmons, Peake, Chamberlain, Jones, Lumetta and Hinojosa violated Plaintiff's clearly established *Fourth Amendment* rights when each used excessive and gratuitous force, brutality and violence against Plaintiff as described above and captured on police video recordings of the

encounter.

60. The Defendant TPD officers knew Plaintiff was unarmed because Plaintiff showed both of his hands.

61. At no time was Plaintiff a threat of flight or fight as evidenced by the fact he complied with Amross's lights and siren, slowed his vehicle, activated his turn signal, and brought his vehicle to complete spot at a well-lit gas station, just as the law required.

62. Defendants Amross, Nastoski, Simmons, Peake and Chamberlain each violated Plaintiff's clearly established *Fourth Amendment* rights when they deliberately lied about material facts in their respective police reports in order to manufacture probable cause for issuance of a warrant for Plaintiff's arrest on two bogus felony charges.

63. Detective Matthew Oliver, in conjunction with the individual Defendant TPD officers, violated Plaintiff's clearly established *Fourth Amendment* rights to be free from malicious prosecution when he delivered a warrant request and recommendation to the Wayne County Prosecutor's Office based on police reports he knew were false and intentionally failed to deliver the police video tapes to the Prosecutor's Office because they established Plaintiff's innocence and the TPD officers' outrageous, unconstitutional and possibly criminal behavior.

64. The criminal proceedings terminated in Plaintiff's favor when all criminal charges against him were dismissed.

65. Defendants' prosecution of Plaintiff for the trumped-up felonies was objectively unreasonable as Defendants lacked any probable cause or legal justification for the charges, just as found by the state district court.

66. Defendant TPD officers' conduct toward and treatment of Plaintiff was willful, malicious, in bad faith, and in reckless disregard of Plaintiff's federally protected constitutional rights.

67. Defendant TPD officers violated Plaintiff's *Fourth Amendment* rights with shocking and willful indifference to Plaintiff's rights and their conscious awareness Plaintiff would suffer severe injuries.

68. The unlawful acts or omissions of Defendant TPD officers were the moving forces behind Plaintiff's injuries.

69. The Defendant TPD officers acted in concert and joint action with each other to deprive Plaintiff of his constitutional rights.

70. Each Defendant TPD officer had a duty to intervene to stop the constitutional violations visited upon Plaintiff.

71. Each Defendant TPD officer breached their respective duty to intervene and, instead of stopping their fellow TPD officers in the repeated violations of Plaintiff's guaranteed federal rights, each respective Defendant TPD

officer participated in the violations and then attempted to conceal their unlawful conduct.

72. As previously alleged, Defendant TPD officers are not entitled to qualified immunity for the conduct described herein.

73. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered terror, pain, agony, fear, anxiety, shock, degradation, indignity, depression, mortification, embarrassment, humiliation, mental distress, PTSD, loss of the enjoyments of life, out of pocket expenses, other economic, non-economic damages that will continue through beyond this litigation.

74. In addition to the compensatory, economic, consequential, and special damages available, Plaintiff is entitled to punitive damages against each of the individually named Defendants under *42 USC § 1983*, in that the actions of each of these individual Defendant TPD officers were malicious, willful or with reckless or wanton disregard of Plaintiff's constitutional rights.

**ACCORDINGLY**, Plaintiff seeks judgment against Defendants, jointly and severally, for damages in whatever amount in excess of this Court's jurisdictional limits to which Plaintiff is entitled, which is reasonable, fair and just, plus costs, interest and reasonable attorney fees, together with punitive damages as permitted under *42 USC §§ 1983, 1985* and *1988*.

## COUNT II

### *FOURTEENTH AMENDMENT* EQUAL PROTECTION VIOLATION

75. Plaintiff reasserts each allegation above, word for word, paragraph for paragraph.

76. The *Fourteenth Amendment's Equal Protection Clause* provides:

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

77. Plaintiff, as a Black male, is among the class of persons protected under the *Equal Protection Clause*.

78. Defendant TPD officers were inclined and predisposed to treat similarly situated Black persons differently from White persons and did so with Plaintiff.

79. Defendant TPD has a long history of animus and discrimination towards Black persons which animus and discrimination has gone unrecognized and unaddressed by the TPD.

80. The TPD violated Plaintiff's clearly established *Fourteenth Amendment* Equal Protection rights, when they arrested him without probable cause, pulled him from his vehicle, threw him to the ground, drew their weapons, tased him repeatedly, viciously beat him, and used excessive force *because* he is Black.

81. Had Plaintiff been White, he would not have been beaten, repeatedly tased or otherwise treated in the manner captured in the video tapes and described herein.

82. Among other things, the TPD's racial animus towards Black persons was demonstrated by Defendant Nastoski's racist *"Welcome to Taylor"* comment to Plaintiff immediately after his gang beating by the TPD officers.

83. Each Defendant TPD officer had a duty to intervene to stop the constitutional violations visited upon Plaintiff.

84. Each TPD officer breached their duty to intervene and, instead of stopping their fellow TPD officers in the repeated violations of Plaintiff's guaranteed federal rights, each TPD officer voluntarily participated in the violations.

85. Defendant officers are not entitled to qualified immunity for the violation of Plaintiff's clearly established *Fourteenth Amendment* rights of which any reasonable person would know.

86. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered terror, pain, agony, anxiety, shock, degradation, indignity, depression, fear, mortification, embarrassment, mental distress, PTSD, loss of the enjoyments of life, out of pocket expenses, other economic, non-economic damages that will continue beyond this litigation.

87. In addition to the compensatory, economic, consequential, and special damages available, Plaintiff is entitled to punitive damages against each of the individually named Defendants under *42 USC § 1983,* in that the actions of each of these individual Defendants were malicious, willful or with reckless or wanton disregard of Plaintiff's constitutional rights.

**ACCORDINGLY**, Plaintiff seeks judgment against Defendants, jointly and severally, for damages in whatever amount in excess of this Court's jurisdictional limits to which Plaintiff is entitled, which is reasonable, fair and just, plus costs, interest and reasonable attorney fees, together with punitive damages as permitted under *42 USC §§ 1983, 1985* and *1988.*

## COUNT III

### *MONELL* CLAIM AGAINST CITY OF TAYLOR

88. Plaintiff reasserts each allegation above, word for word and paragraph for paragraph.

89. At the time of the constitutional deprivations discussed above, Defendant City of Taylor had an illegal policy or custom of treating Black persons differently from White persons in violation of the *Fourteenth Amendment's Equal Protection Clause,* including the use of unnecessary and excessive force in violation of the *Fourth Amendment,* as Plaintiff was treated in this case.

90. At the time of the constitutional deprivations described above, the

17

City of Taylor failed to properly train its officers in diversity, and, in fact, trained, expected and encouraged officers to treat Black citizens differently from similarly situated White citizens, as Plaintiff was treated in this case.

91. At the time of the constitutional deprivations described above, the unconstitutional acts and omissions of the Defendant TPD officers was ratified by an official with final decision-making authority (i.e., the Chief of Police) and a custom of acquiescence and tolerance to the TPD's long-standing practice of treating Black citizens differently from similarly situated White citizens, as Plaintiff was treated in this case.

92. This unconstitutional policy and custom was evidenced by the City of Taylor's fabrication of material facts in the police reports of the respective officers, the approval of their superiors, the lack of any discipline to the TPD officers and the deliberate failure to disclose or otherwise deliver the police video of the encounter with Plaintiff to the Wayne County Prosecutor's Office with the warrant request and recommendation.

93. As a direct and proximate result of Defendant City of Taylor's unlawful conduct, Plaintiff suffered terror, pain, agony, anxiety, shock, degradation, indignity, depression, mental distress, PTSD, loss of the enjoyments of life, out of pocket expenses, other economic, non-economic damages that will continue beyond this litigation.

94. In addition to the compensatory, economic, consequential, and special damages available, Plaintiff is entitled to punitive damages against each of the individually named Defendants under *42 USC § 1983,* in that the actions of each of these individual Defendants were malicious, willful or with reckless or wanton disregard of Plaintiff's constitutional rights.

**ACCORDINGLY**, Plaintiff seeks judgment against Defendants, jointly and severally, for damages in whatever amount in excess of this Court's jurisdictional limits to which Plaintiff is entitled, which is reasonable, fair and just, plus costs, interest and reasonable attorney fees, together with punitive damages as permitted under *42 USC §§ 1983, 1985* and *1988.*

Respectfully submitted,

s/ Joel B. Sklar
Joel B. Sklar (P38338)
500 Griswold, Suite 2450
Detroit, MI 48226
313-963-4529
Attorney for Plaintiff

Date: February 25, 2021        Joel@joelbsklarlaw.com

## **JURY DEMAND**

Plaintiff Brendan Morgan hereby demands a jury trial in the above captioned matter.

Respectfully submitted,

s/ Joel B. Sklar
Joel B. Sklar (P38338)
500 Griswold, Suite 2450
Detroit, MI 48226
313-963-4529
Attorney for Plaintiff
Joel@joelbsklarlaw.com

Date: February 25, 2021